ERNEST LANE, III

**James ANDREWS, Plaintiff,**

v.

**U. S. INDUSTRIES, INC. and Gay Togs, Inc., Defendants.**

No. 77 C 2047.

United States District Court,
E. D. New York.

Feb. 27, 1978.

Carl E. Person, New York City, for plaintiff.

Kaye, Scholer, Fuerman, Hays & Handler by Michael D. Blechman and Cynthia M. Cohen, New York City, for defendants.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

Plaintiff's detailed complaint recites an intricate web of plots and counterplots, all of which relate to an alleged conspiracy among unfaithful employees and others to steal merchandise from the defendants. Plaintiff charges that despite, or perhaps because of, his investigative efforts to uncover and stop the alleged thefts, defendants terminated his employment as a trucker for Gay Togs, Inc. The seven count complaint charges violations of the federal antitrust laws, state antitrust laws, breach of an oral contract, negligence, misrepresentation, fraud, tortious destruction of a business and prima facie tort. Of special concern here, however, is Count One of the complaint, premised on 15 U.S.C. §§ 1 & 15; without it, the remaining pendent claims must be dismissed for want of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

By motion argued February 16, 1978, defendants seek an order dismissing Count One of the complaint for failure to state a claim upon which relief can be granted. FRCP 12(b)(6). For the reasons set forth below, defendants' motion is granted and the entire complaint is dismissed.

Count One of plaintiff's complaint alleges a conspiracy among defendant Gay Togs, defendant U. S. Industries, Inc. (USI), and five trucking competitors of plaintiff, the purpose of which was to drive plaintiff out of business so that Gay Togs' officers, and employees and others could continue in a scheme of stealing from defendant. Specifically, the complaint recites that: in 1967 plaintiff started trucking for Gay Togs in New York and certain counties of New Jersey; USI acquired control of Gay Togs in 1967; during the period following the takeover, plaintiff was obtaining approximately 10% of Gay Togs shipping business headed for an area served by plaintiff while Shapiro-Lampert, a competitor, was getting up to 90% of the shipping business; sometime in 1972 plaintiff became aware of a "theft ring" involving Shapiro-Lampert and Gay Togs' employees; in 1973 plaintiff assisted in an FBI and USI investigation of the theft ring; at the request of USI plaintiff met with a suspected USI employee at which meeting plaintiff was importuned to offer bribes in exchange for receiving more freight business from Gay Togs; the opportunistic employee was transferred, not fired, and plaintiff was told that the investigation was over; plaintiff continued to get an unequal share of the shipping business and continued to complain; the scheme to steal from Gay Togs continued through the new head of Gay Togs' shipping department; in 1975 plaintiff participated in another USI investigation and informed the USI's investigators of the manner in which the theft ring continued to operate; in 1976 USI officials told plaintiff that they had finished their investigation and that they had intended to take corrective measures at Gay Togs; in August 1976 plaintiff suffered "reprisals" at the hands of the suspected Gay Togs officials (including a denial of plaintiff's access to the premises unless accompanied by a security guard); in November 1976 Shapiro-Lampert's trucking contract was terminated by USI and Gay Togs as a result of their pivotal role in the theft ring; immediately thereafter, Gay Togs gave plaintiff all of its shipping busi-

ness in the state of New Jersey; Gay Togs then told plaintiff that unless he met certain conditions (to upgrade his efficiency) Gay Togs would terminate his shipping contract; although plaintiff met these additional conditions, Gay Togs, nonetheless, used trucking firms in addition to plaintiff's for servicing the New Jersey area; in January 1977, Gay Togs cut back on the business it gave to plaintiff; plaintiff was assured by USI officials that USI would never forget the assistance given by plaintiff and that he would not be hurt; plaintiff's trucking contract with Gay Togs was terminated in April, 1977—all allegedly in violation of 15 U.S.C. §§ 1 & 15.

Assuming plaintiff's allegations to be true, and even assuming that (1) Gay Togs could enter into a conspiracy with its own employees, *but see, e. g., Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 531 F.2d 910 (CA8 1976); *Nelson Radio & Supply Co. v. Motorola, Inc.,* 200 F.2d 911 (CA5 1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed.2d 1356 (1953); *Person v. New York Post Corporation,* 427 F.Supp. 1297 (E.D.N.Y.1977), (2) parent USI could conspire with its wholly-owned subsidiary, Gay Togs, *but see, e. g., Beckman v. Walter Kidde & Company,* 316 F.Supp. 1321 (E.D.N.Y.1970), *aff'd per curiam,* 451 F.2d 593 (CA2 1971), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2488, 33 L.Ed.2d 333 (1972); *Ark Dental Supply Co. v. Cavitron Corp.,* 461 F.2d 1093 (CA3 1972); *Call Carl, Inc. v. BP Oil Corp.,* 403 F.Supp. 568 (D.Md.1975), *aff'd,* 554 F.2d 623 (CA4 1977), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977), and (3) plaintiff's conclusory allegation that the competing truckers were co-conspirators is legally sufficient to state a claim, *but see, e. g., Heart Disease Research Foundation v. General Motors Corp.* 463 F.2d 98 (CA2 1972); *Klebanow v. New York Produce Exchange,* 344 F.2d 294 (CA2 1965); *Wolff v. Ford Motor Co.,* 1977–1 Trade CAS ¶ 61, 409 (S.D.N.Y.1977), Count One of plaintiff's complaint still would not state a claim in violation of the anti-trust laws.

Simply stated, that plaintiff may have been harmed by his termination does not give him a claim under the antitrust laws unless his termination was prompted by an anticompetitive purpose or has an anticompetitive effect. See, *e. g., Venzie Corp. v. United States Mineral Products Co.,* 521 F.2d 1309 (CA3 1975); *Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245 (CA5 1975); *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283 (CA6), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963). According to plaintiff, the avowed goal of defendants' decision to terminate him was to continue their scheme of stealing, hardly an anticompetitive purpose within the meaning of the antitrust laws. *See, Bushie v. Stenocord Corp.,* 460 F.2d 116, 119–20 (CA9 1972). With respect to an anticompetitive effect, the termination of plaintiff, if anything, enhanced rather than diminished competition. Before the events complained of all of defendants' trucking was done by two truckers—plaintiff and one other. Before plaintiff was terminated, he alone did defendants' trucking. Thereafter, the work has been performed by four trucking firms.

Moreover, plaintiff has neither alleged injury to competition in general nor competitive injury to plaintiff in particular, nor could he do so, since in this industry defendants could not be the only possible source of trucking business for plaintiff. *See Potter's Photographic Applications Co. v. Ealing Corp.,* 292 F.Supp. 92 (E.D.N.Y.1968). In sum,

[u]nless it can be said that the refusal to deal with plaintiff had the result of suppressing competition and thus constituted "restraint of trade" within the meaning of § 1 of the Sherman Act, there is no violation of the Act * * *.

* * * the substitution of one distributor for another in a competitive market of the kind herein involved does not eliminate or materially diminish the existing competition of distributors * *, is not an unusual business procedure, and * * * not an unreasonable restraint of trade. *Ace Beer Distributors, Inc. v. Kohn, Inc., supra,* 318 F.2d at 287.

Accordingly, defendants' motion to dismiss Count One of the complaint for failure to state a claim pursuant to FRCP 12(b)(6) is granted. Moreover, there being no independent basis for this court's jurisdiction over the pendent claims recited in Counts Two through Seven of the complaint, they are dismissed for want of subject matter jurisdiction. *United Mine Workers v. Gibbs, supra.* Accord, *Kavit v. A. L. Stamm and Co.*, 491 F.2d 1176 (CA2 1974); *Ruckle v. Roto American Corp.*, 339 F.2d 24 (CA2 1974); *Zimmel Associates v. Warner Brothers, Inc.*, 1977–1 Trade Cas. ¶ 61, 249 (EDNY 1977).

SO ORDERED.